## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LOIS HARRIS, individually and on behalf of all similarly-situated persons,

       Plaintiff,

v.

FANEUIL, INC.,

       Defendant.

Civil Action No. 1:21-cv-01539-TWT

**JURY TRIAL DEMANDED**

## PLAINTIFF'S UNOPPOSED MOTION FOR STIPULATED JUDGMENT AND ORDER APPROVING JOINT STIPULATION OF COLLECTIVE ACTION SETTLEMENT AND RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT

Plaintiff Lois Harris ("Harris" or "Plaintiff"), by and through her undersigned counsel, hereby files this Unopposed Motion for Stipulated Judgment and Order Approving Joint Stipulation of Collective Action Settlement and Release.[1]  In support of her motion, Plaintiff states as follows:

---

[1] Terms in this joint motion have the same definition as set forth in the Joint Stipulation of Collective Action Settlement and Release.

## I.    STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS

### A.    Pleadings, Settlement Discussions, and Informal Discovery

Plaintiff filed this putative collective action pursuant to 29 U.S.C. § 216(b) on April 18, 2021.  (Doc. 1).  The Collective Action Complaint (the "Complaint") alleges that Defendant Faneuil, Inc. ("Faneuil" or "Defendant") failed to include nondiscretionary bonuses in the "regular rate" of pay when calculating overtime for Plaintiff and other Call Center Agents, including Customer Service Representatives ("Call Center Agents") under the federal Fair Labor Standards Act ("FLSA").

Plaintiff and Defendant (collectively the "Parties") agreed to request a stay of the proceedings to explore the collective allegations and determine whether a resolution of such claims could be reached.  On June 11, 2021, the Parties filed their Joint Motion to Stay Proceedings in Furtherance of Resolution (Doc. 10), which the Court granted on June 14, 2021 (Doc. 11).  On May 6, 2022, following extensive data collection efforts and analysis, Defendant produced to Plaintiff's counsel detailed and anonymized pay data information regarding pay periods in which Call Center Agents worked over 40 hours and earned bonuses.  Declaration of Justin M. Scott ("Scott Decl.") at ¶ 10.  This data was collected and produced for 4,690 individuals for the pay periods starting on April 6, 2018 and ending on

April 22, 2022.  *Id.*  Both Parties performed independent damages analyses based on this pay data.  *Id*.

### B.    <u>Arms' Length Settlement Negotiations</u>

From June 3, 2022 to July 14, 2022, following the analysis of the pay data, the Parties conducted extensive and detailed settlement negotiations.  On June 14, 2022, the Parties reached a settlement in principle as to all claims in the litigation, including the release of all claims based on the alleged failure to include nondiscretionary bonuses in the regular rate of pay when calculating overtime from April 18, 2018 to April 18, 2022 for the individuals in the Settlement Collective who choose to opt-in the case, and specifically excluding any employees who worked in California and all claims under California law.  *Id.* at ¶ 11.

From July 14, 2022 to September 8, 2022, the Parties then negotiated the terms of the Joint Stipulation of Collective Action Settlement and Release (the "Agreement") that memorializes the terms of the proposed collective FLSA settlement, an executed version of which is attached hereto as Exhibit 1.  The Agreement includes as exhibits: the proposed Notice of Settlement of Alleged Unpaid Overtime Lawsuit Involving Certain Individuals Employed by Faneuil as Call Center Agents Between April 18, 2018 and April 18, 2022 (the "Notice"); and proposed Consent to Join/Claim Form and Release (the "Claim Form").  Plaintiff

agreed that she would submit this motion to the Court requesting approval of the Agreement, and Defendant agreed that it would not oppose this motion for purposes of settlement.

## II.    ARGUMENT AND CITATION OF AUTHORITY

In order to have an enforceable release of FLSA claims in this Circuit, the Court must review and approve agreements settling alleged violations of the FLSA. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 702–14 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Accordingly, Plaintiff is submitting a copy of the Agreement for the Court's review and approval. A proposed Order entering the stipulated judgment approving the Agreement is attached hereto as Exhibit 2.

### A.    APPROVAL OF PAYMENTS TO PLAINTIFF AND MEMBERS OF THE FINAL SETTLEMENT COLLECTIVE

In order to approve a proposed settlement of overtime claims, a court must determine that the settlement is a "fair and reasonable [resolution] of a bona fide

dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355.[2]   There is a strong

presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress*

*Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit

Court of Appeals "favor[s] and encourage[s] settlements in order to conserve

judicial resources."). The Eleventh Circuit has detailed the circumstances that

justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by
> employees under the FLSA for back wages because initiation of the
> action by the employees provides some assurance of an adversarial
> context.   The employees are likely to be represented by an
> attorney who can protect their rights under the statute. Thus, when the
> parties submit a settlement to the court for approval, the settlement is
> more likely to reflect a reasonable compromise of disputed issues than
> a mere waiver of statutory rights brought about by an employer's
> overreaching. If a settlement in an employee FLSA suit does reflect a
> reasonable compromise over issues, such as FLSA coverage or
> computation of back wages, that are actually in dispute; we allow the
> district court to approve the settlement in order to promote the policy
> of encouraging settlement of litigation.

*Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In determining whether the settlement

is fair, adequate, and reasonable, courts sometimes examine the factors used in

approving the settlement of class actions under Federal Rule of Civil Procedure 23:

(1) the existence of collusion behind the settlement;

---

[2] The separate payment to Ms. Harris in exchange for her general release does not
involve a release of FLSA claims, and is supported by separate consideration, and
accordingly does not require a *Lynn's Food* review.

     (2) the complexity, expense, and likely duration of the litigation;

     (3) the stage of the proceedings and the amount of discovery completed;

     (4) the probability of plaintiff's success on the merits;

     (5) the range of possible recovery; and

     (6) the opinions of counsel.

*See e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 WL 2861483, at *2 (M.D. Fla. June 2014)); *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Garcia v. Riccy's Landscaping Servs., Inc.*, 2009 WL 347418 at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange Cty., Fla.*, 2006 WL 3614925 at *3 (M.D. Fla. Dec. 11, 2006).[3]  As set forth below, examination of each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable, and should be approved by the Court.

### 1.  The Absence of Collusion.

Prior to any settlement discussions, defense counsel produced to Plaintiff's counsel data for a three-year statutory period.  Scott Decl. ¶¶ 10-11.  This exchange included detailed and anonymized pay data information regarding pay periods in

---

[3] Concern for absent class members, which underlies the approval factors in a Rule 23 settlement, is less present in an FLSA settlement such as this one, where each opt-in Plaintiff has the right to review the settlement agreement and determine whether they will participate in the settlement.

which Call Center Agents worked over 40 hours and earned bonuses for 4,690 individuals for the pay periods starting on April 6, 2018 and ending on April 22, 2022. *Id*. at ¶ 10. This information exchange allowed the Parties to fully evaluate the maximum potential liability in the case if all bonuses were included over the statutory period. *Id.*

Following this rigorous and detailed analysis, and as set forth above, the Parties engaged in extensive settlement negotiations before ultimately reaching an agreement to settle the case. *Id.* at ¶ 11. Thus, the settlement in this case is the ultimate result of arm's-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes.

Under the terms of settlement (if approved), the 4,690 putative collective members would have the opportunity to share, for their overtime claims based on the alleged failure to include nondiscretionary bonuses in the regular rate for purposes of calculating overtime during the period of April 18, 2018 to April 18, 2022, the total gross amount of $53,333.33, the net of the Maximum Gross Settlement Amount of $80,000 following payment of proposed attorneys' fees, costs, and expenses.

The Parties agree to calculate the amount of each Final Settlement Collective member's potential distribution from the Revised Gross Settlement Amount of

$53,333.33 based on proportionate allocations of each individual's alleged actual damages during the period of April 18, 2018 to April 18, 2022, measured by the increased overtime resulting from inclusion of the allegedly nondiscretionary bonuses in the regular rate of pay when calculating overtime.  Scott Decl. ¶¶ 13-14. The allocation also includes a $5.00 floor, which affects approximately 3,316 putative Settlement Collective members.  *Id*.

Defendant denies any liability under the FLSA of any kind and denies that Plaintiff and putative Settlement Collective members are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding the costs and disruption of ongoing litigation, Defendant has agreed to make the settlement payments reflected in the Agreement.

In exchange for these settlement payments, Plaintiff and members of the Final Settlement Collective will provide Defendant with a narrowly-tailored release covering claims based on the alleged failure to include nondiscretionary bonuses in the regular rate for purposes of calculating overtime during the applicable period. *See* Exhibit 1, Agreement § VIII.  There is no general release from Final Settlement Collective members, nor is there a broad wage-and-hour release from them.  The Agreement contains no confidentiality provision.  All of the above terms establish that this settlement was reached by arm's-length

negotiations without collusion by or on behalf of any parties.

### 2.    The Complexity, Expense, and Likely Duration of the Litigation.

The Agreement allows Plaintiff and members of the Final Settlement Collective to take a substantial portion of their potential recovery now, without suffering the delay and risk of litigating the claims.  In this case, further litigation, including significant discovery regarding the issue of whether the bonuses at issue were discretionary or nondiscretionary, along with significant certification and summary judgment briefing on the disputed legal issues in the case, willfulness and liquidated damages, and appeals, could drag on for years and require the expenditure of a tremendous amount of resources.  Fees, costs, and expenses in this case would only have continued to increase for both sides if the case had not settled.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed.

This factor considers whether the parties have had the opportunity to fully evaluate the claims.  *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 WL 3715446, *19 (N.D. Ala. 2004); *see Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209–10 (M.D. Ga. 1988).

In this case, the Parties exchanged significant informal discovery on a confidential basis in furtherance of resolution, including Defendant's production of all of the putative Settlement Collective members' relevant time records, bonuses, and relevant and bonus periods. Scott Decl. ¶ 10. As a result of these efforts, the Parties have had sufficient information upon which to assess the potential merit of each claim, potential liability, and the apparent risks regarding certification, and opposition thereto, and of proceeding to trial.

### 4.    The Probability of Plaintiff's Success on the Merits.

Defendant has asserted that it has properly compensated Settlement Collective members under the FLSA, including that the bonuses at issue were discretionary and therefore properly excluded from the regular rate under 29 U.S.C. § 207(e)(3). Defendant has also denied that it willfully violated the FLSA and has asserted the "good faith" defense to liquidated damages under 29 U.S.C. § 260. Accordingly, disputes exist as to liability, the amount of overtime damages if liability is established (if some but not all of the bonuses should have been included), liquidated damages and the applicable statutory period (two or three years). Plaintiff maintains that all of the bonuses at issue were nondiscretionary in nature and should have therefore been included in the regular rate of pay when calculating overtime, that Defendant willfully violated the FLSA by not paying for

these breaks, and that Defendant cannot satisfy the requirements of the "good faith" defense to liquidated damages under 29 U.S.C. § 260.  The Parties therefore disagree on the likelihood of Plaintiff's success on the merits, the applicable statutory period, the availability of liquidated damages, and whether the action would be certified absent a settlement.[4]

### 5.    The Range of Possible Recovery.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Assuming the full three-year statute of limitations prior to the filing of Plaintiff's Complaint, starting at April 18, 2018, and continuing through April 18, 2022, the inclusion of the bonuses at issue in the regular rate of overtime for Plaintiff and all putative

---

[4] Though Defendant would, in the course of litigation, vigorously oppose the merits of Plaintiff's claims and oppose the certification of any collective under Section 216(b) of the FLSA, it does not oppose the instant motion for preliminary approval of the proposed settlement or the certification of the proposed Settlement Collective for settlement purposes only. To the extent that the Court does not grant approval of the proposed settlement, Defendant reserves the right to raise any argument with respect to the merits of Plaintiffs' claims or the appropriateness of the certification of any FLSA collective that it might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by Plaintiff in this memorandum.

Settlement Collective members (which excludes California employees) yields, according to Plaintiff's counsel's calculations, an additional amount of overtime under the FLSA of $80,913.65. This does not include liquidated damages or attorneys' fees, costs, and expenses. Accordingly, Plaintiff contends that the proposed settlement represents a large percentage of the maximum potential recovery, without liquidated damages and attorneys' fees, costs, and expenses, over the entire statutory period.

### 6.    Counsels' Opinions

Based on what the Parties learned through informal discovery and extensive data analysis, Plaintiff's counsel believes that he negotiated a fair settlement for the Plaintiffs. By settling, Plaintiff and members of the Final Settlement Collective avoid: the risks of not establishing significant liability at trial; challenges to certification; substantial and indefinite delay in payment involved in having to wait for trial and any appeals; and potential adverse determinations on the liability and damages issues outlined above. Plaintiff's Counsel therefore recommends acceptance of this settlement and represents herein that the settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs. Counsel for Defendant does not oppose this recommendation.

## III.    APPROVAL OF PAYMENT OF ATTORNEYS' FEES[5]

The Agreement provides that Defendant shall pay Plaintiffs' attorneys' fees, costs, and expenses in the amount of $26,666.67. *See* Exh. 1 at § VII. For purposes of this motion, the $26,666.67 is allocated as $487.00 in costs and $26,179.67 in fees.  The requested fees and costs represent 33.33% of the $80,000.00 Maximum Gross Settlement Amount, not including the separate payment to the Plaintiff, Ms. Harris, for her general release (which excludes certain identified claims).

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."   29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases.   *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). In the instant action, Plaintiff contends that she and members of the Final Settlement Collective stand to recover a favorable settlement payment of a

---

[5] While Defendant does not oppose Plaintiff's request for approval of payment of attorney's fees, costs, and expenses, Defendant does not join in the request.

substantial percentage of the maximum potential overtime owed. Thus, Plaintiff and members of the Final Settlement Collective are entitled to payment of their attorneys' fees, costs, and expenses in this action by Defendant in the amount stated in the Agreement.

Plaintiff's Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement, and Plaintiff's Counsel has agreed to the substantially lower percentage of 33.33%. (Scott Decl. ¶¶ 13, 22.) Because of this contingency fee arrangement, Plaintiff's Counsel has not received payment for any of their time litigating the case, nor have they received reimbursement for their out-of-pocket costs expended. (*Id.* at ¶¶ 22-23.) Regardless, Plaintiff's Counsel undertook the financial risk of potentially unsuccessful litigation, in an effort to recover overtime pay for workers they believe were not paid for all hours worked. (*Id.*)

Courts routinely approve similar contingency agreements in the amount of one-third, and it would be fair and reasonable to do so here as well. *See e.g.*, *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington v. Taco Bell of Am., Inc.*,

2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (collecting cases and finding that attorney's fees equivalent to 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%). Viewed under a common fund analysis, therefore, Plaintiff's fee request is eminently reasonable.

Plaintiff is aware, however, of cases in this circuit scrutinizing FLSA settlements wherein attorneys' fees, costs, and expenses, and payments to plaintiffs were negotiated "simultaneously." *See*, *e.g.*, *Martin v. Huddle House, Inc.*, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011). However, it is Plaintiff's position that *Martin* and the cases cited therein did not involve "common fund" collective action settlements, but rather simultaneous negotiation of payments to individual plaintiffs and separate payments to the attorneys. *Martin* involved a settlement which netted the plaintiff's counsel $8,500 and only provided $6,500 in payments to the plaintiffs. Likewise, cases citing *Martin* for the suggestion that fees should be negotiated separately from wages do not involve common fund settlements of

collective actions. *See*, *e.g.*, *Marshall v. Good Vocations, Inc.*, 2013 WL 394389, at *1 (S.D. Ga. Jan. 31, 2013); *Barnes v. Ferrell Elec., Inc.*, 2013 WL 5651903, at *2 n.3 (S.D. Ga. Oct. 16, 2013). Accordingly, Plaintiff respectfully submits that it is entirely proper to settle an FLSA collective action for a common fund with attorney's fees, costs, and expenses as a percentage of the common fund. Here, the attorney's fees, costs, and expenses were included in negotiations as a reasonable percentage of the overall common fund (or Maximum Gross Settlement Amount), and Plaintiff's counsel agreed to a substantially lower percentage than the 40% to which counsel was contractually entitled.

Lead counsel for Plaintiffs has more than a decade of wage-and-hour experience, has litigated tens of class and collective wage-and-hour actions in numerous courts across the country, and has regularly acts as lead counsel on FLSA collective actions in the Northern District of Georgia. (Scott Decl. at ¶¶ 2-6.) Plaintiff's Counsel has diligently pursued relief on behalf of the FLSA collective since that time, including hours of reviewing and analyzing time and pay data as well as research regarding the collective claims and potential defenses to same. (*Id.* at ¶¶ 7-12, 16, 19-21.)

Lastly, Plaintiffs note that the Agreement imposes substantial post-approval work on Plaintiff's Counsel. Specifically, Plaintiff's Counsel is responsible for

responding to inquiries from members of the Settlement Collective and Final Settlement Collective and, if requested, counseling them regarding their rights in the settlement. *See* Ex. 1. Accordingly, if the Court is inclined to scrutinize Plaintiff's fees, costs, and expenses for the purpose of reducing the claimed fee amount, Plaintiff respectfully requests that the Court reserve such analysis for after settlement administration, at which point Plaintiff's Counsel could, if the Court wishes, submit contemporaneous time entries with additional briefing.

## IV.    <u>APPOINTMENT OF THE CLAIMS ADMINISTRATOR</u>

The qualified settlement fund to be established under the terms of the Agreement will be administered by an independent and experienced third-party settlement administrator, and Plaintiff requests that Rust Consulting, be appointed as the settlement Claims Administrator ("Claims Administrator") in the Court's Stipulated Judgment and Order. As Claims Administrator, Rust Consulting, has agreed to subject itself to the jurisdiction of the Court and waive any jurisdictional objections.

## V.    <u>CONCLUSION</u>

For the reasons set forth above and for good cause shown, Plaintiff respectfully request that this Court grant this unopposed motion and enter the

Order attached hereto as Exhibit 2 approving the Agreement (attached hereto as Exhibit 1) by stipulated judgment.

Respectfully submitted, this 12th day of September 2022.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Michael David Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, GA 30030
T: (678) 780-4880
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

*Attorney for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this document was prepared in compliance with LR 7.1, N.D. Ga.  This document was prepared in Times New Roman 14-point font.

*s/ Justin M. Scott*
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2022, I electronically filed the foregoing **<u>PLAINTIFF'S UNOPPOSED MOTION FOR STIPULATED JUDGMENT AND ORDER APPROVING JOINT STIPULATION OF COLLECTIVE ACTION SETTLEMENT AND RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT</u>** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of all attorneys of record.

*/s/ Justin Scott*
Counsel for Plaintiff
